# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **ELAINE CHIVON FELDER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00041 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,[1]** | ) | |
| | ) | |
| Defendant. | ) | |

*Michael F. Gibson, Gibson Lefler & Associates, Princeton, West Virginia, for Plaintiff.  Eric P. Kressman, Regional Chief Counsel, Region III, Heather Benderson, Assistant Regional Counsel, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

## I

Plaintiff Elaine Chivon Felder, formerly Elaine Chivon Freeman, filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and

---

[1]  Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

supplemental security income ("SSI") pursuant to Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34 (West 2011 & Supp. 2013), 1381-83f (West 2012 & Supp. 2013).  Jurisdiction of this court exists under 42 U.S.C.A. § 405(g) and 1383(c)(3).

Felder protectively applied for DIB and SSI benefits on March 8, 2008, alleging disability beginning on September 30, 2008.  She met the insured status requirements through March 31, 2009.  Felder's claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on November 10, 2010, at which Felder, represented by counsel, and a vocational expert testified.  On January 13, 2011, the ALJ issued a decision denying Felder's claim.  The Appeals Council denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Felder then filed the Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is now ripe for decision.


II

Felder alleged disability due to spinal injuries.  Felder was 41 years old at the time of the ALJ's decision, making her a "younger person" under the

regulations.  20 C.F.R. § 404.1563(c) (2013).  She has a high school education and certifications as an emergency medical technician ("EMT") and a certified nursing assistant.  She previously worked as a convenience store cashier/stocker, fast food worker/stocker, and EMT.  The record indicates that Felder has not engaged in substantial gainful activity since the alleged onset date of September 30, 2008.  (R. at 12.)

Felder testified that she initially sustained her back and shoulder injuries in a 1998 automobile accident.  (R. at 29, 35.)  In 2003, Alfred L. Mauro, M.D., during a follow-up appointment, diagnosed Felder with cervical and lumbar radiculopathy and left shoulder tendinitis.  Dr. Mauro reported that Felder experienced minimal palpatory pain in her paravertebral lower quadrant with negative pain in the sciatic notch and sacroiliac joint, but noted that she experienced pain in the facet joints.  Dr. Mauro noted that heel and toe walking was minimally painful, but that straight leg raising ("SLR") did not produce low back pain.  Dr. Mauro's report also indicated that Felder experienced pain along the supraspinatus tendon area in her left arm which restricted abduction and adduction.  (R. at 221.)

Felder's medical records also indicate she underwent several MRIs in 2003. The MRIs, performed by various doctors, showed mild disc degeneration of Felder's cervical spine and mild annular bulge of her thoracic spine, but otherwise showed no evidence of disc herniation, spinal stenosis, neural impingement, or any

other abnormality in her back.  (R. at 224-225.) The MRIs also showed mild tendinosis and probable partial thickness tear involving the supraspinatus tendon in her left shoulder, and tendinosis of the rotator cuff in her right shoulder.  (R. at 226-227.)

On January 3, 2008, Felder sought emergency room treatment after falling on some ice and snow.  X rays of Felder's lumbosacral spine, pelvis, and left hip were all negative.  Felder was diagnosed with left hip contusion, prescribed Ultram, Flexeril, and warm moist compress, and was discharged.  (R. at 283, 314-316).

In February 2008 following the fall, X rays were taken by Tuan G. Nguyen, M.D., of Felder's lumbar spine and were negative.  (R. at 318.)

On April 12, 2008, Edward T. Tolosa, M.D., completed a medical evaluation of Felder for the Temporary Assistance for Needy Families, Virginia Initiative for Employment not Welfare, and Food Stamp Employment and Training Program agencies of the Virginia Department of Social Services.  (R. at 269.)  Dr. Tolosa indicated that Felder's primary diagnosis was degenerative joint disease of the cervical and lumbar spine.  (R. at 268.)  Based on a July 2008 evaluation, Dr. Tolosa concluded that Felder was unable to participate in employment and training activities for 90 days.  (R. at 267.)

After Dr. Tolosa's evaluation, Felder visited Robert W. Seaman, M.D., on April 17, 2008.  A cervical spine MRI performed by Dr. Seaman showed chronic degenerative change at C5-C6, disk space narrowing and posterior spurring, and narrowing of the intervertebral foramina, but found no acute disk herniations, fractures, osseous lesions, or spinal stenosis  (R. at 270.) and a lumbar spine MRI showed mild left unilateral bulging of the annulus at L3-4.  (R. at 271.)

In October 2008, Felder presented to Robert P. Kropac, M.D., at the Orthopaedic Center of the Virginias, complaining of chronic low back and left knee pain.  Dr. Kropac performed an orthopedic re-examination of Felder, and reported that she had tenderness over the lumbosacral spine and related paraspinal muscle mass.  Dr. Kropac said that SLR precipitated lower back pain at 90 degrees, but that X rays of her left knee were normal, and examination of the knee did not reveal any evidence of any effusion.  Dr. Kropac diagnosed Felder with lumbosacral musculoligamentous strain and left knee strain, and advised her to continue Motrin, Robaxin, and Ultram, but recommended no other treatment.  (R. at 238-239.)

Felder followed-up with Dr. Kropac on January 20, 2009.  (R. at 249.) Felder again complained of back and knee pain, but now complained of neck pain. Dr. Kropac also reported that Felder indicated the use of medications allowed for "a more functional and social life existence."  (*Id*.)  Dr. Kropac's physical

examination found tenderness over the posterior spinous processes, interspinous ligaments of the mid and lower cervical spine and over the paraspinal muscle masses adjacent to the lower cervical spine.  (R. at 249-250.)  Dr. Kropac found that the range of motion ("ROM") of Felder's cervical spine was limited due to secondary pain.  He also noted pain in the lower back precipitated by SLR at 90 degrees in the sitting posture.  (R. at 250.)  Dr. Kropac reported that the sensation of Felder's upper extremities was grossly intact, and added cervicodorsal musculoligamentous strain to his list of previous diagnoses.  (*Id.*)  He ultimately advised Felder to continue taking Motrin, Robaxin, and Ultram, and also prescribed Darvocet N for relief of breakthrough pain.  Dr. Kropac concluded that "No other treatment is recommended." (*Id.*)

Later that year, Felder was involved in an automobile accident, and presented at the Bluefield Regional Medical Center on September 3, 2009.  Felder underwent X rays which showed decreased disc space height at C5-6 and osteoarthritic vertebral body lipping, but no prevertebral soft tissue swelling, and no signs of fracture, sublaxation, or jumped facet.  (R. at 346.)  Images of Felder's thoracic spine showed no abnormalities, and images of her pelvis, left tibia fibula, and left foot were negative.  (R. at 346-347.)

Following the automobile accident, Felder had a checkup with Yogesh Chand, M.D., on September 30, 2009.  Dr. Chand reported that SLR was negative

bilaterally, neurological function of Felder's legs was normal, her gait was normal, her hips, knees, ankles, and feet were normal, there was no weakness of the legs, and there was good sensation and circulation.  (R. at 364.)

Felder followed-up with Dr. Chand on November 24, 2009.  Dr. Chand affirmed his September 30, 2009 findings, and also noted that Felder was negative for numbness and tingling in the upper and lower extremities.  (R. at 367.)

At a subsequent checkup on February 23, 2010, with Dr. Chand, Felder complained of pain in her thoracolumbar spine on the left side which resulted after doing minor lifting at home.  (R. at 370.)  Dr. Chand noted that Felder was tender over the thoracolumbar spine into the left paraspinal muscle, but that she was negative for any numbness or tingling in the lower extremities.  Dr. Chand also noted that Felder's gait was normal, her SLR test was negative, and neurological function of the legs was normal.  (*Id*.)  Dr. Chand diagnosed Felder with sprain of the thoracolumbar spine and prescribed Lortab 10 for pain management.  (*Id*.)

Images of Felder's thoracic spine and left foot were normal on March 26, 2010.  (R. at 349.)

Felder visited Abed Koja, M.D., Board Certified Neurosurgeon, complaining of neck and left arm pain, on May 14, 2010.  Dr. Koja performed a neurological exam and found that Felder was generally intact, except for increased pain with extension and flexion to the left.  (R. at 351.) Dr. Koja ordered an MRI of Felder's

spine, which showed degenerative changes at the C5-6 levels which resulted in bilateral neural foraminal narrowing, and no significant central canal stenosis. Otherwise, the cervical MRI was unremarkable.  (R. at 353.)

At a checkup on August 5, 2010, Dr. Chand reported that Felder's SLR tests were bilaterally negative.  Dr. Chand also noted that a neurological exam of her legs was normal, and that the ROM of her upper extremities was normal.  (R. at 389.)

Two physicians assessed Felder's residual functional capacity ("RFC").  On March 13, 2009, Thomas Phillips, M.D., reviewed Felder's records on behalf of the state agency.  Dr. Phillips opined that Felder could occasionally lift 20 pounds and could frequently lift 10 pounds.  (R. at 256.)  According to Dr. Phillips, Felder could stand or walk for about six hours in an eight-hour workday, with normal breaks, and could sit for about six hours in an eight-hour workday.  (*Id.*)  She could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and she could occasionally balance, stoop, kneel, crouch, and crawl.  (R. at 257.) Dr. Phillips found Felder's statements regarding her symptoms and functional limitations to be partially credible based on the record as a whole.  (R. at 260.)  Dr. Phillips assessed Felder as capable of performing light work with the above-mentioned conditions.  (R. 255-260.)

On October 20, 2009, Michael Hartman, M.D., reviewed Felder's records on behalf of the state agency.   Dr. Hartman's evaluation mirrored Dr. Phillip's opinion.  (R. at 330.)  Dr. Hartman also opined that, while Felder alleged various side effects from the use of prescribed medication, the record indicated that those side effects are mild and would not interfere with her ability to perform work activities.  (R. at 334.)  Dr. Hartman also opined that the report provided by Dr. Tolosa was considered, but not given full weight due to inconsistencies with the totality of the evidence in file.  (*Id*.) Ultimately, Dr. Hartman assessed Felder as capable of performing light work with the abovementioned limitations.  (*Id*.)

At the ALJ hearing on November 10, 2010, Leah Perry Salyers, a vocational expert ("VE"), testified.  The ALJ posed a hypothetical scenario in which she described an individual with the RFC to perform light work with some modifications.  (R. at 42.) The VE indicated that a person of Felder's age, education, and work experience, with the stated RFC, could not work Felder's past jobs, but that such a person could perform several jobs that existed in significant numbers in the national economy, including unskilled clerical worker, telephone interview worker, and light counter cashier  (R. at 41-43.)

Additionally, the VE testified that a person of Felder's age, education, and work experience, with the RFC to perform sedentary work, could perform several jobs that existed in significant numbers in the national economy, including

machine monitor, telephone order clerk, and non-emergency dispatcher. (R. at 44-45.)

The ALJ found that Felder met the insured status requirements through March 31, 2009, had not engaged in substantial gainful activity since September 30, 2008, and had the severe impairments of a back disorder, a history of left shoulder tendinitis in April 2003, degenerative changes of the thoracic spine, tendinitis/tendinosis of the right shoulder rotator cuff in 2003, and a history of left foot and ankle sprain in November 2007. The ALJ also found that none of Felder's impairments or combination of impairments met or medically equaled one of the listed impairments under Social Security Administration regulations.

The ALJ further found that Felder's medically determinable impairments could reasonably be expected to cause the alleged symptoms that could mildly interfere with daily activities, but that Felder's statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with the RFC assessment. The ALJ gave no weight to Dr. Tolosa's opinion that the claimant was unable to work because it was not supported by objective findings or the claimant's treatment history. The ALJ also found that Felder has the RFC to perform light work with certain exceptions. The ALJ concluded that Felder was unable to perform any past relevant work, but could perform several jobs that exist in significant numbers in the national

economy, and was therefore not disabled, as defined in the Act, from the alleged date of onset through the date of the decision.

Following the ALJ's decision, Felder submitted 32 pages of additional evidence to the Appeals Council. These documents included treatment notes from Dr. Chand, dating from September 30, 2009, through August 5, 2010, in which Dr. Chand ultimately diagnosed Felder with chronic back pain with an unclear cause, but otherwise found that Felder's gait, SLR, and neurological examinations were normal. (R. at 392-425.)

The additional evidence also included records from Dr. Tolosa dating from July 1, 2008, through September 17, 2008, that are identical to records submitted prior to the ALJ's decision. (R. at 261-265, 429-432.) The exhibit also contained Virginia Department of Social Services forms dated December 2008, April 12, 2009, July 24, 2009, and October 21, 2010, in which Dr. Tolosa again opined that Felder was disabled and unable to work. (R. at 433, 438, 440, 441-442.) In addition, the newly submitted evidence contained a "Medical Assessment of Ability to Do Work Related Activities (Physical)" and "Clinical Assessment of Pain" forms, completed by Dr. Tolosa on February 11, 2011, in which Dr. Tolosa opined that Felder had several severe physical limitations, would be absent from work more than three times per month, and that Felder's pain was "incapacitating." (R. at 445-448.) Felder also submitted interrogatories dated April 25, 2011, in

which Dr. Tolosa opined that Felder's pain, in and of itself, was totally disabling, and that drowsiness was a side effect of Felder's medication. (R. at 449.)

Finally, the additional evidence contained a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form completed by Dr. Kropac on June 31, 2011. Dr. Kropac opined that Felder could lift and carry 20 pounds occasionally and 10 pounds frequently. (R. at 456.) According to Dr. Kropac, Felder could stand and walk for less than two hours, and sit for less than two hours, in an eight-hour workday, and could occasionally climb, balance, stoop, crouch, kneel, and crawl. (*Id.*) Dr. Kropac also opined that Felder had an impaired ability to reach and would need to change positions every 30 minutes, but that Felder's impairments would cause her to be absent from work less than once a month. (R. at 456, 458.)

Dr. Kropac also provided a "Clinical Assessment of Pain" form, completed on June, 31, 2011, in which Dr. Kropac reported that Felder's pain was present to such an extent as to be distracting to adequate performance of daily activities/work, and that physical activity greatly increases pain causing abandonment of task related to daily activities. (R. at 459.) However, Dr. Kropac opined that with medications, Felder "should be able to return [to] full work duty." (*Id.*)

Felder contests the ALJ's decision, arguing that it is not supported by substantial evidence because the ALJ failed to recognize Felder's pain as a severe

impairment.  Felder further argues that the ALJ erred by not considering the side effects of Felder's medications on her ability to work.  Felder also asserts that the ALJ failed to give proper weight to the opinion of Dr. Tolosa, one of Felder's treating physicians.  Finally, Felder argues that the additional evidence submitted to the Appeals Council after the ALJ's decision contradicts the ALJ's conclusion.

The Commissioner argues that the ALJ fully considered the record and properly applied the law in determining that Felder retained the RFC to perform work that existed in significant numbers in the national economy.   The Commissioner contends that substantial evidence supports the ALJ's evaluation of Felder's subjective complaints of pain and the effects of her medication on her ability to work.   The Commissioner further argues that substantial evidence supports the ALJ's finding that Dr. Tolosa's opinion of disability was entitled to no weight.   Finally, the Commissioner argues that the new evidence submitted by Felder is cumulative and would not change the ALJ's decision.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).   The standard for disability is strict.   The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do

h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted).

Felder first argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to recognize Felder's pain as a severe impairment. When a claimant alleges disability because of pain, the ALJ applies a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ determines whether the claimant suffers from a medically determinable impairment which would reasonably be expected to cause the pain alleged. *Id.* Next, the ALJ evaluates the intensity and persistence of the alleged pain and the extent to which it impacts the claimant's ability to work. *Id.* at 595. In this second step, the ALJ

> must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, . . . any objective medical evidence of pain . . . , and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* at 595 (citations omitted). Here, the ALJ found that Felder suffered from medically determinable impairments that could reasonably be anticipated to cause the alleged pain. The ALJ further found, however, that Felder's testimony with

respect to the intensity, persistence, and limiting effects of the pain was not fully credible. The ALJ considered objective medical evidence and exams by treating physicians, and the ALJ noted X rays performed by Dr. Kropac which indicated that Felder's left knee was normal. The ALJ further considered an exam by Dr. Chand, who found that Felder was negative for numbness and tingling in the upper and lower extremities, had a normal gait, had normal functioning in her upper and lower extremities, had negative SLR bilaterally, and had normal neurological functioning in her legs. The ALJ also considered evidence from 2010, which consisted of images indicating that Felder's thoracic spine and left foot were normal. The ALJ further considered an evaluation of Felder's complaints of neck and left arm pain, performed by Dr. Koja, a Board Certified Neurosurgeon, which found that Felder was generally intact, except for increased pain with extension and flexion to the left. Finally, the ALJ considered an examination performed by Dr. Chand in August 2010 which found that Felder's SLR was negative bilaterally, and which found that neurological functioning in her legs was normal. Based on the record as a whole, the ALJ concluded that while Felder does experience pain, her pain is not disabling. This conclusion is supported by substantial evidence. It is not my task to make credibility determinations, and I may not substitute my judgment for the judgment of the ALJ. *See Johnson*, 434 F.3d at 653. Because the

ALJ's findings regarding Felder's alleged pain are supported by substantial evidence, I must uphold those findings.

Next, Felder argues that the ALJ erred by not considering the side effects of Felder's medications on her ability to work. Felder concedes that the ALJ found that Felder's medications "make her drowsy and sometimes nauseous." (R. at 17.) Felder argues, though, that beyond this acknowledgement, the ALJ gave no consideration to the side effects of the medication on her ability to work. However, the ALJ noted that she gave "some weight to the claimant's subjective allegations," which would include Felder's allegations regarding the side effects of her medication. (R. at 18.) Moreover, the ALJ considered a January 20, 2009, evaluation by Dr. Kropac, a treating physician, during which Felder reported that the use of medication allowed for "a more functional and social life existence." (R. at 249.) In addition, the ALJ "gave some weight" to the opinion of State agency medical expert Dr. Hartman. (R. at 18.) Dr. Hartman, after reviewing Felder's medical records, opined that while Felder does experience side effects from her medication. The side effects are mild and would not interfere with her ability to perform work activities. (R. at 334.)

The ALJ, after considering this evidence, nonetheless concluded that Felder was not disabled. Dr. Kropac and Dr. Hartman's evaluations are substantial evidence that support this conclusion. Because the ALJ's findings regarding the

alleged side effects of Felder's medications are supported by substantial evidence, I must uphold those findings.

Next, Felder argues that the ALJ failed to give proper weight to the opinion of Dr. Tolosa, one of Felder's treating physicians.  An ALJ is required to weigh medical opinions based on: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654.  While "[c]ourts often accord greater weight to the testimony of a treating physician," *id.* (internal quotation marks and citation omitted), the ALJ is not required to do so "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590.  If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must "give good reasons in [the] notice of determination or decision for the weight [he or she] give[s] [the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2013).

Here, the ALJ expressly stated that she gave no weight to Dr. Tolosa's opinion because it was not supported by objective findings or Felder's treatment history.  (R. at 14.)  While the objective medical record did indicate Felder had some limitation of function as the result of various musculoskeletal impairments,

-18-

exams performed by at least three treating physicians support the conclusion that Felder's impairments were not as severe as Dr. Tolosa's evaluation suggested. Moreover, Dr. Tolosa's opinion of disability was inconsistent with the evaluations performed by Dr. Phillips and Dr. Hartman, who found that Felder was capable of performing a limited range of light work. The opinions of a claimant's treating physician may only be overlooked if there is persuasive contradictory evidence, but the opinions of a non-examining physician can also be relied upon when they are consistent with the record. *Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986). Accordingly, the ALJ was within her discretion in declining to afford Dr. Tolosa's opinion weight. In accordance with the regulations, the ALJ provided sufficient explanation for why she gave no weight to Dr. Tolosa's opinion.

Finally, Felder argues that the additional evidence submitted to the Appeals Council after the ALJ's decision contradicts the ALJ's conclusion. The Appeals Council, and this court, must consider new and material evidence submitted after the ALJ's decision that is relevant to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b) (2013); *see Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (holding that where Appeals Council considered additional evidence and incorporates it into the record, reviewing court must also consider the new evidence as part of the record). This means that I must review the ALJ's decision in light of evidence that the ALJ

never considered, *see Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999), while also refraining from making factual determinations, *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010). Therefore, my review of the new evidence is limited to determining whether it "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (internal quotation marks and citations omitted). If the new evidence creates a conflict, then a remand is warranted so that the Commissioner can weigh and resolve the conflicting evidence. *Id.*

I find that the additional evidence submitted to the Appeals Council does not contradict the ALJ's decision. The newly submitted evidence is largely cumulative of evidence that was already in the record and contains no new information that would likely have changed the ALJ's decision. Dr. Chand's newly submitted treatment notes indicate the same conclusions as his prior examinations, that Felder's gait, SLR, and neurological examinations were normal. (R. at 392-425.) Many of Dr. Tolosa's newly submitted medical records are duplicative of information considered by the ALJ. Dr. Tolosa's later-submitted opinions that Felder was disabled would have been rejected for the same reasons that the ALJ rejected his other opinions, namely, because they are not supported by objective findings or Felder's treatment history. Many of Dr. Kropac's newly submitted

treatment notes are cumulative.  Though Dr. Kropac's "Medical Assessment of Ability to Do Work-Related Activities (Physical)" indicates that he believed Felder could only stand and walk for less than two hours, and sit for less than two hours, in an eight-hour workday, Dr. Kropac also indicated that he believed Felder's impairments would cause her to miss work less than one day a month, and Dr. Kropac's "Clinical Assessment of Pain" form indicates that he believed, that with medications, Felder "should be able to return [to] full work duty."  (R. at 459.) These findings are consistent with other evidence considered by the ALJ that Felder was not disabled and would be able to perform light work, and I therefore find that the evidence submitted after the ALJ's decision does not provide a basis for remanding the case.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  August 6, 2013

/s/  James P. Jones
United States District Judge

-21-